## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **LOUIS ZIER,** | : | **Civil No.  1:22-CV-1902** |
| | : | |
| **Plaintiff** | : | |
| | : | |
| **v.** | : | **(Magistrate Judge Carlson)** |
| | : | |
| **KILOLO KIJAKAZI**, | : | |
| **Acting Commissioner of Social Security** | : | |
| | : | |
| **Defendant** | : | |

## MEMORANDUM OPINION

## I.    Introduction

For Administrative Law Judges (ALJs), Social Security disability determinations frequently entail an informed assessment of competing medical opinions coupled with an evaluation of a claimant's subjective complaints. Once the ALJ completes this task, on appeal it is the duty and responsibility of the district court to review these ALJ findings, judging the findings against a deferential standard of review which simply asks whether the ALJ's decision is supported by substantial evidence in the record,  see 42 U.S.C. § 405(g); Johnson v. Comm'r of Soc. Sec., 529 F.3d 198, 200 (3d Cir. 2008); Ficca v. Astrue, 901 F. Supp.2d 533, 536 (M.D. Pa. 2012), a quantum of proof which "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable

1

mind might accept as adequate to support a conclusion." Pierce v. Underwood, 487 U.S. 552, 565 (1988). This informed assessment by the ALJ, however, must be accompanied by "a clear and satisfactory explication of the basis on which it rests." Cotter v. Harris, 642 F.2d 700, 704 (3d Cir. 1981).

This case illustrates the importance of this duty of articulation since in the instant case we are presented with an ALJ's opinions which contains a material, internal inconsistency regarding the medical evidence as it pertains to one of Zier's primary severe impairments. This internal inconsistency is neither, addressed, or even acknowledged, in the ALJ's decision.

In the instant case, an ALJ denied a disability application submitted by Louis Zier, who applied for disability benefits in 2015 alleging disability due to both physical and mental impairments, including notably a history of degenerative disc disease of the lumbar spine. With respect to these impairments, do not write on a blank slate. Quite the contrary, this was the second decision by an ALJ, the first having been remanded by the Appeals Council to a new ALJ in the face of an Appointments Clause challenge. This second decision by the ALJ, however, contains an internal inconsistency. Initially, the ALJ, in finding that Zier did not meet the requirements of Listing 1.15, stated that there was no MRI or EMG study in the record that documented nerve root compression. (Tr. 20-21). Curiously,

2

however, the ALJ later described a November 2017 MRI which "noted severe right L5-S1 neural foraminal narrowing and exiting right L5 *nerve root compression in the L5-S1 neural foramen*" (Tr. 24) (emphasis added).

The ALJ's decision did not explain this internal inconsistency. Rather, the ALJ simply found that Zier did not meet this listing, which, if met, would render Zier *per se* disabled. Instead, the ALJ ultimately found that Zier could perform a range of sedentary work and denied his application for benefits for the period of September 22, 2015 to October 4, 2021.[1]

On appeal, the issue of whether the ALJ adequately addressed Zier's lumbar impairments has been specifically raised by the plaintiff, who has highlighted the apparent internal inconsistency in this decision. (Doc. 17 at 4-5). Therefore, this issue is properly before us in this appeal. Given these inherently contradictory findings, we find that the ALJ's decision does not meet the burden of articulation required by law and we cannot conclude that substantial evidence supports the ALJ's decision in this case. Accordingly, this case will be remanded for further consideration by the Commissioner.

---

[1] The ALJ's decision found that as of his 50th birthday, on October 5, 2021, Zier became disabled and remained disabled through the date of the decision, November 2, 2021. (Tr. 29).

II.    <u>**Discussion**</u>

A.    <u>**Substantial Evidence Review – the Role of this Court**</u>

When reviewing the Commissioner's final decision denying a claimant's application for benefits, this Court's review is limited to the question of whether the findings of the final decision-maker are supported by substantial evidence in the record.  See 42 U.S.C. §405(g); <u>Johnson v. Comm'r of Soc. Sec.</u>, 529 F.3d 198, 200 (3d Cir. 2008); <u>Ficca v. Astrue</u>, 901 F. Supp.2d 533, 536 (M.D. Pa. 2012). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." <u>Pierce v. Underwood</u>, 487 U.S. 552, 565 (1988).  Substantial evidence is less than a preponderance of the evidence but more than a mere scintilla. <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971).  A single piece of evidence is not substantial evidence if the ALJ ignores countervailing evidence or fails to resolve a conflict created by the evidence.  <u>Mason v. Shalala</u>, 994 F.2d 1058, 1064 (3d Cir. 1993).  But in an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's decision] from being supported by substantial evidence." <u>Consolo v. Fed. Maritime Comm'n</u>, 383 U.S. 607, 620 (1966).  "In determining if the Commissioner's decision is

supported by substantial evidence the court must scrutinize the record as a whole." Leslie v. Barnhart, 304 F. Supp.2d 623, 627 (M.D.Pa. 2003).

The question before this Court, therefore, is not whether the claimant is disabled, but rather whether the Commissioner's finding that he is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. See Arnold v. Colvin, No. 3:12-CV-02417, 2014 WL 940205, at *1 (M.D. Pa. Mar. 11, 2014) ("[I]t has been held that an ALJ's errors of law denote a lack of substantial evidence." )(alterations omitted); Burton v. Schweiker, 512 F. Supp. 913, 914 (W.D. Pa. 1981) ("The Secretary's determination as to the status of a claim requires the correct application of the law to the facts."); see also Wright v. Sullivan, 900 F.2d 675, 678 (3d Cir. 1990) (noting that the scope of review on legal matters is plenary); Ficca, 901 F. Supp.2d at 536 ("[T]he court has plenary review of all legal issues . . . .").

Several fundamental legal propositions which flow from this deferential standard of review. First, when conducting this review "we are mindful that we must not substitute our own judgment for that of the fact finder." Zirnsak v. Colvin, 777 F.3d 607, 611 (3d Cir. 2014) (citing Rutherford, 399 F.3d at 552). Thus, we are enjoined to refrain from trying to re-weigh the evidence. Rather our task is to simply determine whether substantial evidence supported the ALJ's findings. However, we

must also ascertain whether the ALJ's decision meets the burden of articulation demanded by the courts to enable informed judicial review. Simply put, "this Court requires the ALJ to set forth the reasons for his decision." Burnett v. Comm'r of Soc. Sec. Admin., 220 F.3d 112, 119 (3d Cir. 2000). As the Court of Appeals has noted on this score:

> In Burnett, we held that an ALJ must clearly set forth the reasons for his decision. 220 F.3d at 119. Conclusory statements . . . are insufficient. The ALJ must provide a "discussion of the evidence" and an "explanation of reasoning" for his conclusion sufficient to enable meaningful judicial review. Id. at 120; see Jones v. Barnhart, 364 F.3d 501, 505 & n. 3 (3d Cir.2004). The ALJ, of course, need not employ particular "magic" words: "Burnett does not require the ALJ to use particular language or adhere to a particular format in conducting his analysis." Jones, 364 F.3d at 505.

Diaz v. Comm'r of Soc. Sec., 577 F.3d 500, 504 (3d Cir. 2009).

Thus, in practice ours is a twofold task. We must evaluate the substance of the ALJ's decision under a deferential standard of review, but we must also give that decision careful scrutiny to ensure that the rationale for the ALJ's actions is sufficiently articulated to permit meaningful judicial review.

## B.   Initial Burdens of Proof, Persuasion, and Articulation for the ALJ

To receive benefits under the Title II of the Social Security Act by reason of disability, a claimant must demonstrate an inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental

6

impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. §423(d)(1)(A); 42 U.S.C. §1382c(a)(3)(A); see also 20 C.F.R. §§404.1505(a), 416.905(a).  To satisfy this requirement, a claimant must have a severe physical or mental impairment that makes it impossible to do his or her previous work or any other substantial gainful activity that exists in the national economy.  42 U.S.C. §423(d)(2)(A); 42 U.S.C. §1382c(a)(3)(B); 20 C.F.R. §§404.1505(a), 416.905(a). To receive benefits under Title II of the Social Security Act, a claimant must show that he or she contributed to the insurance program, is under retirement age, and became disabled prior to the date on which he or she was last insured.  42 U.S.C. §423(a); 20 C.F.R. §404.131(a).

In making this determination at the administrative level, the ALJ follows a five-step sequential evaluation process.   20 C.F.R. §§404.1520(a), 416.920(a). Under this process, the ALJ must sequentially determine: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment; (4) whether the claimant is able to do his or her past relevant work; and (5) whether the claimant is able to do any other work, considering his or her age,

education, work experience and residual functional capacity ("RFC").  20 C.F.R. §§404.1520(a)(4), 416.920(a)(4).

Between Steps 3 and 4, the ALJ must also assess a claimant's residual functional capacity (RFC).  RFC is defined as "that which an individual is still able to do despite the limitations caused by his or her impairment(s)."  Burnett v. Comm'r of Soc. Sec., 220 F.3d 112, 121 (3d Cir. 2000) (citations omitted); see also 20 C.F.R. §§404.1520(e), 404.1545(a)(1), 416.920(e), 416.945(a)(1).   In making this assessment, the ALJ considers all of the claimant's medically determinable impairments, including any non-severe impairments identified by the ALJ at step two of his or her analysis.  20 C.F.R. §§404.1545(a)(2), 416.945(a)(2).

There is an undeniable medical aspect to an RFC determination, since that determination entails an assessment of what work the claimant can do given the physical limitations that the claimant experiences. Yet, when considering the role and necessity of medical opinion evidence in making this determination, courts have followed several different paths. Some courts emphasize the importance of medical opinion support for an RFC determination and have suggested that "[r]arely can a decision be made regarding a claimant's residual functional capacity without an assessment from a physician regarding the functional abilities of the claimant." Biller v. Acting Comm'r of Soc. Sec., 962 F. Supp. 2d 761, 778–79 (W.D. Pa. 2013)

8

(quoting <u>Gormont v. Astrue</u>, Civ. No. 11–2145, 2013 WL 791455 at *7 (M.D. Pa. Mar. 4, 2013)). In other instances, it has been held that: "There is no legal requirement that a physician have made the particular findings that an ALJ adopts in the course of determining an RFC." <u>Titterington v. Barnhart</u>, 174 F. App'x 6, 11 (3d Cir. 2006). Further, courts have held in cases where there is no evidence of any credible medical opinion supporting a claimant's allegations of disability that "the proposition that an ALJ must always base his RFC on a medical opinion from a physician is misguided." <u>Cummings v. Colvin</u>, 129 F. Supp. 3d 209, 214–15 (W.D. Pa. 2015).

These seemingly discordant legal propositions can be reconciled by evaluation of the factual context of these decisions. Those cases which emphasize the importance of medical opinion support for an RFC assessment typically arise in the factual setting where a well-supported medical source has opined regarding limitations which would support a disability claim, but an ALJ has rejected the medical opinion which supported a disability determination based upon a lay assessment of other evidence. In this setting, these cases simply restate the commonplace idea that medical opinions are entitled to careful consideration when making a disability determination, particularly when those opinions support a finding of disability. In contrast, when an ALJ is relying upon other evidence, such

9

as contrasting clinical or opinion evidence or testimony regarding the claimant's activities of daily living, to fashion an RFC courts have adopted a more pragmatic view and have sustained the ALJ's exercise of independent judgment based upon all of the facts and evidence. See Titterington v. Barnhart, 174 F. App'x 6, 11 (3d Cir. 2006); Cummings, 129 F.Supp.3d at 214–15. In either event, once the ALJ has made this determination, our review of the ALJ's assessment of the plaintiff's RFC is deferential, and that RFC assessment will not be set aside if it is supported by substantial evidence. Burns v. Barnhart, 312 F.3d 113, 129 (3d Cir. 2002); see also Metzger v. Berryhill, No. 3:16-CV-1929, 2017 WL 1483328, at *5 (M.D. Pa. Mar. 29, 2017), report and recommendation adopted sub nom. Metzgar v. Colvin, No. 3:16-CV-1929, 2017 WL 1479426 (M.D. Pa. Apr. 21, 2017); Rathbun v. Berryhill, No. 3:17-CV-00301, 2018 WL 1514383, at *6 (M.D. Pa. Mar. 12, 2018), report and recommendation adopted, No. 3:17-CV-301, 2018 WL 1479366 (M.D. Pa. Mar. 27, 2018).

At Steps 1 through 4, the claimant bears the initial burden of demonstrating the existence of a medically determinable impairment that prevents him or her in engaging in any of his or her past relevant work. Mason, 994 F.2d at 1064.  Once this burden has been met by the claimant, it shifts to the Commissioner at Step 5 to show that jobs exist in significant number in the national economy that the claimant

10

could perform that are consistent with the claimant's age, education, work experience and RFC.  20 C.F.R. §§404.1512(f), 416.912(f); <u>Mason</u>, 994 F.2d at 1064.

The ALJ's disability determination must also meet certain basic substantive requisites. Most significant among these legal benchmarks is a requirement that the ALJ adequately explain the legal and factual basis for this disability determination. Thus, in order to facilitate review of the decision under the substantial evidence standard, the ALJ's decision must be accompanied by "a clear and satisfactory explication of the basis on which it rests." <u>Cotter v. Harris</u>, 642 F.2d 700, 704 (3d Cir. 1981).  Conflicts in the evidence must be resolved and the ALJ must indicate which evidence was accepted, which evidence was rejected, and the reasons for rejecting certain evidence.  <u>Id</u>. at 706-707.  In addition, "[t]he ALJ must indicate in his decision which evidence he has rejected and which he is relying on as the basis for his finding."  <u>Schaudeck v. Comm'r of Soc. Sec</u>., 181 F. 3d 429, 433 (3d Cir. 1999).

## C. <u>Legal Benchmarks Governing Step 3 of This Sequential Analysis</u>

This dichotomy between the Act's deferential standard of review and caselaw's requirement that ALJs sufficiently articulate their findings to permit meaningful judicial review is particularly acute at Step 3 of this disability evaluation

11

process. At Step 3 of this sequential analysis, the ALJ is required to determine whether, singly or in combination, a claimant's ailments and impairments are so severe that they are *per se* disabling and entitle the claimant to benefits. As part of this Step 3 disability evaluation process, the ALJ must determine whether a claimant's alleged impairment is equivalent to a number of listed impairments, commonly referred to as listings, that are acknowledged as so severe as to preclude substantial gainful activity.  20 C.F.R. § 416.920(a)(4)(iii); 20 C.F.R. pt. 404, subpt. P, App. 1; Burnett, 220 F.3d 112, 119.

In making this determination, the ALJ is guided by several basic principles set forth by the social security regulations and case law. First, if a claimant's impairment meets or equals one of the listed impairments, the claimant is considered disabled *per se* and is awarded benefits. 20 C.F.R. §416.920(d); Burnett, 220 F.3d at 119. However, to qualify for benefits by showing that an impairment, or combination of impairments, is equivalent to a listed impairment, a plaintiff bears the burden of presenting "medical findings equivalent in severity to *all* the criteria for the one most similar impairment." Sullivan v. Zebley, 493 U.S. 521, 531 (1990) (citing 20 C.F.R. §416.920(d); SSR 83-19 at 91). An impairment, no matter how severe, that meets or equals only some of the criteria for a listed impairment is not sufficient. Id.

12

The determination of whether a claimant meets or equals a listing is a medical one. To be found disabled under Step 3, a claimant must present medical evidence or a medical opinion that his or her impairment meets or equals a listing. An ALJ is not required to accept a physician's opinion when that opinion is not supported by the objective medical evidence in the record. Maddox v. Heckler, 619 F.Supp. 930, 935-936 (D.C. Okl. 1984); Carolyn A. Kubitschek & Jon C. Dubin, Social Security Disability Law and Procedure in Federal Courts, § 3:22 (2014). However, it is the responsibility of the ALJ to identify the relevant listed impairments, because it is "the ALJ's duty to investigate the facts and develop the arguments both for and against granting benefits." Burnett, 220 F.3d at 120 n.2.

On this score, however, it is also clearly established that the ALJ's treatment of this issue must go beyond a summary conclusion, since a bare conclusion "is beyond meaningful judicial review." Burnett, 220 F.3d at 119. Thus, case law "does not require the ALJ to use particular language or adhere to a particular format in conducting his analysis. Rather, the function . . . is to ensure that there is sufficient development of the record and explanation of findings to permit meaningful review." Jones, 364 F.3d at 505. This goal is met when the ALJ's decision, "read as a whole," id., permits a meaningful review of the SLJ's Step 3 analysis. However, when "the ALJ's conclusory statement [at Step 3] is . . . beyond meaningful judicial review," a

13

remand is required to adequately articulate the reasons for rejecting the claim at this potentially outcome-determinative stage. <u>Burnett</u>, 220 F.3d at 119.

**D.**  **This Case Should Be Remanded for Further Consideration and Articulation of the Grounds for the ALJ's Decision.**

As we have noted, it is axiomatic that an ALJ's decision must be accompanied by "a clear and satisfactory explication of the basis on which it rests." <u>Cotter</u>, 642 F.2d at 704. Furthermore, the ALJ must also "indicate in his decision which evidence he has rejected and which he is relying on as the basis for his finding." <u>Schaudeck</u>, 181 F.3d at 433. In the instant case, we conclude that the ALJ's Step 3 determination is not supported by an adequate explanation.

Here, the ALJ's decision denying Zier's application for benefits contains an internal inconsistency that is not explained by the ALJ relating too the severity of Zier's spinal impairments. At the outset, the ALJ considered Listing 1.15 relating to disorders of the skeletal spine resulting in compromise of a nerve root. To meet the requirements of Listing 1.15, a claimant must demonstrate:

> A. Neuro-anatomic(radicular) distribution of one or more of the following symptoms consistent with compromise of the affected nerve root(s):
> ………..
>
> AND

14

B. Radicular distribution of neurological signs present during physical examination (see 1.00C2) or on a diagnostic test (see 1.00C3) and evidenced by 1, 2, and either 3 or 4:

………...

AND

C. Findings on imaging (see 1.00C3) consistent with compromise of a nerve root(s) in the cervical or lumbosacral spine.

AND

D. Impairment-related physical limitation of musculoskeletal functioning that has lasted, or is expected to last, for a continuous period of at least 12 months, and medical documentation of at least one of the following . . .

20 C.F.R. § Pt. 404, Sbpt. P., App. 1, § 1.15.

The ALJ's decision stated that the ALJ had considered this listing but found that "the claimant does not meet the listing as there is no MRI or EMG studies documenting compromise of a nerve root." (Tr. 20-21). The ALJ further reasoned that no medical source had opined that Zier met the listing. However, the ALJ did not discuss the other parameters of the listing in finding that Zier did not meet this listing. Moreover, later in the decision, when discussing the medical evidence in the record, the ALJ noted that the record contained a November 2017 MRI which "noted severe right L5-S1 neural foraminal narrowing and exiting right L5 *nerve root compression in the L5-S1 neural foramen*" (Tr. 24) (emphasis added). Indeed, the medical record contains a record of this MRI conducted on November 21, 2017, by

15

Zier's treating provider, Dr. Stephanie Cabello, M.D., which indicates the impression was "Severe right L5-S1 neural foraminal narrowing, increased compared with May 2014. *New exiting right L5 nerve root compression in L5-S1 neural foramen compared with May 2014.*" (Tr. 795) (emphasis added). Additionally, a May 2014 MRI also showed nerve root compression, which the ALJ acknowledged in this decision but appeared to dismiss, reasoning that the November 2017 evidence of nerve root compression was "otherwise stable when compared with the May 2014 MRI." (Tr. 24).

Thus, there is an inherent contradiction within the ALJ's decision that is not explained by the ALJ. Further, this contradiction may have great significance due to the fact that if found to meet Listing 1.15, Zier would be *per se* disabled. Accordingly, resolution of these inconsistencies could potentially change the outcome of this case. When apparent internal inconsistencies dictate a claimant's ability to meet a listed impairment, courts have recognized that a remand to clarify these inconsistencies is often necessary. See e.g., James v. Kijakazi, 2022 WL 1519220, at *6 (D.N.J. May 13, 2022) (remanding the plaintiff's case finding that "[b]ased on the present record, absent explanation by the ALJ, it is not clear to the Court how the ALJ concluded that Plaintiff does not meet or medically equal Listing 1.04A"); Fongsue v. Saul, 2020 WL 5849430, at *7 (E.D. Pa. Sept. 30, 2020)

(collecting cases) (remanding the plaintiff's case where "the ALJ's discussion of Listing 1.04 was limited to a single conclusory sentence"); <u>Karstein v. Comm'r of Soc. Sec.</u>, 2018 WL 5669172, at *8 (D.N.J. Oct. 31, 2018) (remanding the case to the ALJ for further explanation of his Step 3 finding).

So it is here. In this instant case, the ALJ's decision finding that Zier did not meet Listing 1.15 at Step 3 was a single conclusory sentence which stated that the medical record did not contain evidence of nerve root compression. This single conclusory sentence was then contradicted by the ALJ's discussion of the medical record, which did, in fact, include a November 2017 MRI which showed evidence of nerve root compression. This contradiction may have great significance, since if found to meet a listed impairment, Zier would be *per se* disabled. Accordingly, we conclude that a remand is necessary here to explain this internal inconsistency. Finally, we note that nothing in this Memorandum Opinion should be deemed as expressing a judgment on what the ultimate outcome of any reassessment of this evidence should be. Rather, the task should remain the duty and province of the ALJ on remand.

**III.**   <u>**Conclusion**</u>

For the foregoing reasons, this case will be REMANDED to the Commissioner for further administrative proceedings consistent with this Memorandum Opinion.

An appropriate order follows.

<u>/s/ Martin C. Carlson</u>
Martin C. Carlson
United States Magistrate Judge

DATED: July 17, 2023